WICKS (WEED SEWING MACH. CO. v.). See Case No. 17,348.

WICKWARE (LAWRENCE v.). See Case No. 8,148.

WIDDINGTON (SCOTT v.). See Case No. 12,547.

WIEDE v. HOME INS. CO. See Case No. 17,617.

---

## Case No. 17,617.

WIEDE et al. v. INSURANCE CO. OF NORTH AMERICA. SAME v. INTERNATIONAL INS. CO. SAME v. HOME INS. CO.

[3 Chi. Leg. News, 353.]

Circuit Court, D. Minnesota. June, 1871.

ACTIONS ON SEVERAL INSURANCE POLICIES—TRIAL BEFORE SAME JURY—PROOFS OF LOSS—FALSE STATEMENTS—FAILURE OF INSURED TO ANSWER QUESTIONS — NEW TRIAL — EXCESSIVE VERDICT.

1. Where several actions on policies of insurance are brought by the same plaintiffs against different companies, and the questions are the same, the evidence the same, and the

counsel the same. the court may order them all to be tried to the same jury.

[Cited in Mutual Life Ins. Co. v. Hillmon, 145 U. S. 293, 12 Sup. Ct. 912.]

2. A mere failure by the assured to answer questions respecting the loss *held*, under the terms of the policy, not to "forfeit" or "avoid" it. but only to suspend the right to payment until the answers are given.

3. False swearing by the assured in preliminary proofs, or in an examination under oath required by the policy in any material matter, with intent to mislead. avoids the policy; but honest mistakes do not have this effect.

4. Duty of court to grant new trials where the verdicts are against the law and evidence discussed by DILLON, Circuit Judge, and a new trial was conditionally granted after five juries had decided the same issues in the same way.

Allis, Gilfillan & Williams, for plaintiffs.

E. A. Storrs and Lamprays & Brisbin, for defendants.

Before DILLON, Circuit Judge, and NELSON, District Judge.

DILLON, Circuit Judge (charging jury). 1. These are actions brought by the plaintiffs against the several insurance companies above named to recover on policies respectively issued by them. Because the questions to be tried were precisely the same, the evidence the same, the counsel the same, and for other reasons, the court. before the commencement of the trial, ordered that these causes should be tried before the same jury, who were, however, to try them in the same manner precisely as if each was separately on trial. The evidence introduced is equally applicable to all the causes, and no application has been made by counsel to have all but one case withdrawn from the jury, and no reason has been seen by the court why this jury cannot try the issues in one as well as the issues in all, for, when under the pleadings and the evidence you have decided one case you have decided all—they are all alike; but you will return separate verdicts in each.

2. The plaintiffs were, on the 22d day of February, 1867, grocery merchants in this city, and on that day their store was consumed by fire. The plaintiffs had in various insurance companies policies insuring their stock of goods against loss or damage by fire to the amount of $54,600. Among the companies whose policies were held by the plaintiffs were the present defendants, the Insurance Company of North America, the International Insurance Company, and the Home Insurance Company of New York. That there was a fire. and that the plaintiffs' stock of goods in the building at the time was consumed. there is no controversy. But there is a controversy, and a very important one. concerning the extent of this loss; in other words, respecting the amount in value of the goods covered by the policy and destroyed by the fire. The defenses made in the answer, and relied upon on the trial. are two: (1) A denial of the amount of the loss as claimed by

the plaintiffs. (2) Attempts by the plaintiffs to defraud the companies by false swearing as to the value of the goods destroyed, in the proofs of loss, and as to facts touching the loss in examinations under oath, required by the policies, and to which the plaintiffs submitted themselves, and attempts to defraud by other means, such as false entries in books, etc. These defenses will be referred to presently. but there is no defense pleaded based upon the refusal by plaintiffs to furnish invoices or copies of invoices of property destroyed.

3. Before proceeding to a consideration of the main defenses above mentioned, your attention will be called to a point made by the defendants, based upon the refusal of one of the plaintiffs to answer certain questions put to him when being examined under oath under the policy respecting the loss. It appears that on or about the 3d day of April, 1867, Charles Wiede was examined at length, and that examination is in evidence. In the course of that examination certain questions were put to Charles Wiede. which he refused to answer. After this refusal the examination was continued, read over and signed. and appears to be sworn to by him. It is admitted that in point of fact the agents of the insurance companies knew the facts connected with the settlements or proposals to settle with the other companies, and the basis and terms thereof. Under these circumstances the defendants claim that under the policies the effect of the refusal to answer these questions is to defeat the plaintiffs' right to recover. But the court (adhering to the view taken by Mr. Justice Miller at a former trial) is of opinion that by the terms of the policies a mere failure to answer does not "forfeit" or "avoid" the policy. but only suspends the right to payment until such answers are given; that such a defense by the companies is in the nature of abatement. showing no present right of recovery, and should be pleaded separately from the defense of "fraud" or "false swearing," which, if established, are a complete bar to a recovery at any time on the policies; it is not so pleaded, and hence the defendant's defense. based on a refusal to answer certain questions, is not well made. The court need not, therefore, consider the effect of a refusal to answer certain questions in the course of an examination where the examination nevertheless proceeds, and is completed. accepted and signed. This brings us to what. under the issues. the court holds to be the material questions in the case.

4. A question which lies at the basis of this controversy is the value of the merchandise on hand at the time of the fire. On this point the parties differ widely. In the proofs of loss dated in March. 1867. the plaintiffs stated the value of the goods destroyed by the fire at $70,654.85. The same sum was stated as the amount of the loss by the plaintiff. Charles Wiede. in his examination in

April, 1867, under the policy. The petitions in these cases filed and sworn to in July, 1867, also state the actual cash value of the property destroyed to be the said sum of $70,-654.85. On the trial the plaintiff as a witness states the value of the stock on hand to be less than that sum, but to be the sum of $60,000 or $61,000, and more than equal in value to the total insurance thereon, which was the sum of $54,600. On the other hand, the companies in their answer claim that the actual value of the merchandise destroyed by the fire did not exceed $20,000, and on the trial claim that it did not exceed more than the sum of about $29,000. In support of the plaintiff's claim and statement as to value, certain books of account which escaped the fire are adduced and in evidence. The testimony of two persons who had been in the plaintiffs' employment, as to the value of the stock on hand at the time of the fire, has been also produced, and some other circumstances laid before you to support the plaintiffs' claim as to the extent of their loss.

The defendants produce evidence of different kinds with a view to sustain their claim that the plaintiffs have greatly exaggerated and overstated their loss: (1) There is the testimony of witnesses familiar with the value of such merchandise generally, and who saw the plaintiffs' stock not long before the fire, and formed and have stated an opinion as to its value. (2) Proposals to and settlements with other companies for the same loss on the basis that the value of the goods destroyed was the sum of $29,261.36. (3) Evidence that the plaintiffs in the course of negotiations for settlement with other companies admitted that the amount claimed in the proofs of loss was too much, and that their real loss was only the said sum of $29,261.36 or thereabouts. The plaintiffs deny that any such admission was made. (4) Evidence of other wholesale grocery merchants in St. Paul, showing the average proportion which the amount of sales bore to the amount of stock. Beaupre states the average with him to be about one-fourth; Presley, average proportion, one-fourth; Borup, one-sixth; McQuillan, one-sixth; Bohur, one-tenth; Kelley, one-sixth to one-seventh; Constans, one-eighth to one-tenth. The plaintiffs claim that their sales for the year preceding the loss were $118,000 or thereabouts. They claim to have on hand about $60,000 worth of merchandise at the fire, showing that their stock on hand equaled one-half of the amount of their sales. This circumstance the plaintiffs offer evidence to explain on the ground that unlike the other merchants, they were holding for speculation, and not for daily and immediate sale, a large quantity of tobacco and cigars—viz., the sum of about $22,000. The defendants claim that the books of account, because only part are produced, and because of the manner in which they were kept, are unreliable and of little weight.

The plaintiffs claim that their settlements and proposals to settle on the basis of a total loss of $29,261 were made, not because that was the real loss, but because they thought it better to take that and get their pay without delay than to have trouble in litigation.

You will consider all these circumstances and all others in evidence bearing on the question of value, and from a consideration of all determine what was the real value of the goods on hand at the time of the fire. That the companies insured in the aggregate goods to the amount of $54,000, is no evidence whatever that the goods destroyed were worth that sum, or that there was that amount of goods on hand at the time the policies were issued. The burden of proof is on the plaintiffs to satisfy you by the weight of evidence what was the actual cash value of the goods on hand at the time of the fire. If the loss was less than the sum insured, the plaintiffs, if entitled to recover, can recover only in the proportion which the actual loss bears to the whole amount insured on the goods consumed by the fire. As to the defense of fraud and false swearing, it is claimed by the defendants that plaintiffs, under the conditions of the policies, have forfeited all right to recover by reason of fraud and false swearing. The conditions referred to are substantially the same in all of the policies—viz.: If the assured "shall make any attempt to defraud the company by false swearing or otherwise, then and in every such case the policy shall be null and void." If this defense is in your opinion true, the plaintiffs cannot recover; but the burden of proof is upon the defendants to establish it under the answer setting up the defense of "false swearing." The court instructs you that false swearing by the assured, either in the preliminary proofs of loss, or in the examination on oath as required by the policy in a matter material to the right of recovery of the company, with intent to mislead the company, would work a forfeiture of the policy, and false statements by the assured on such examination, with intent to deceive and mislead the companies relative to the terms of settlement by the assured with other companies which had insured the same property are material, and if established will defeat any right to recover under the policy. The plaintiffs are not entitled to a verdict if they intentionally stated their loss under the conditions of the policies, that is, in the manner prescribed in the policies, greater than it was in reality, although you should be of the opinion that they had suffered some loss, for the reason that being guilty of willfully false statements, they cannot appeal successfully to a court of justice to aid them in obtaining the value of the property destroyed. But if these plaintiffs made out their proofs of loss from their best recollection, aided by such books and papers as escaped destruction by fire, and if they had no intention of stating

such loss incorrectly or deceiving the defendants by such statements, then they can recover their pro rata loss, although you should be satisfied that they claimed more than the evidence, in your opinion, would warrant. Honest mistakes in regard to values and amounts of loss should not defeat a recovery. The law grants indulgence where the statements are innocently made, but if it was the purpose of the plaintiffs to deceive and mislead the defendants by their statements, in other words, commit a fraud, they can have no relief in a court of justice.

There is another subject to which the court would call the attention of the jury, and that is this: The plaintiffs must, when examined as witnesses in their own behalf, give you an honest and truthful account of all the facts in the case to which their attention is directed, and if, in your opinion, they have knowingly and willfully sworn falsely upon the trial, when interrogated in regard to any of the facts in controversy, you will be justified in disregarding all of his or their testimony which is not corroborated by other evidence. Now the books of the plaintiffs have been offered in evidence, and are to be considered by you so far as you are satisfied they are reliable. The correctness and truthfulness of any of the entries in them it is for you to determine upon. You are to take them and form your judgment upon their reliability as giving an accurate and correct account of the plaintiffs' business, so far as they relate to such business in connection with all of the evidence in the case. The court cannot point out to you what testimony in relation to them you are to believe or what you are to discredit. These books are not to be considered as conclusive evidence of the correctness or truthfulness of the entries appearing in them, and if you discredit the testimony of plaintiffs given in support of them, after considering all of the evidence in the case, you may reject them entirely in determining the value of the property destroyed by the fire; and you are the exclusive judges of the weight and effect of the evidence.

With these observations the court submits to your deliberate and conscientious determination. A contract of insurance is one with respect to which the law requires both from the company and the person insured, fairness, honesty, and good faith. Whoever sues upon an insurance policy puts these in issue and submits them to the jury and the court. If there is an honest loss, and no fraud or false swearing to the extent of that loss, the companies should be made to pay it. But if the loss be not a real one, or if it is attempted to be magnified by the proofs of loss, and otherwise with a view to deceive and mislead the companies into paying more than is just and right, this the law wisely declares shall forfeit the right to receive anything. You have nothing to do with the result of any former trials, nor why a prior decision in the Home Company case was reversed by the supreme court. Some appeals by counsel have been made to you in favor of and some against corporations. They have no place here. You are to decide these questions in the same manner as if the controversy were between two individuals. The law knows no distinction; the jury's oath forbids them from making any. It would be a just and deserved reproach to the jury system and the law, and a bad state of society, if any suitor or class of suitors had their legal rights decided, not by evidence but by prejudice. It is an easy thing to follow the bias of our sympathies or the dictation of our prejudices; but, when these stand in the way of consciencious convictions of duty arising from the evidence and the law, a jury should not hesitate. The main question here is one of good faith and fairness; this you should decide upon the whole evidence, and according to its fair weight in such way as shall show that you have intelligently considered it, and have been guided by your reason in the discharge of your important and responsible duty.

Under this charge of the court, and the evidence as reviewed by the judge, the jury returned a verdict for a total loss; or, in other words, found that the goods in the store at the time of the fire amounted to $54,600, the amount of the total insurance. This was in face of the admitted fact that the plaintiffs had settled with other companies on the basis of $29,261.36, and of the further fact that one of the plaintiffs, on the trial, admitted that he had sworn such sum to be the actual amount of their loss in the proofs of loss submitted to such companies. The verdict was so clearly contrary to the evidence in the case, that the court immediately set it aside, and, in doing so, DILLON, Circuit Judge, made the following remarks:

"In this case the jury has discharged its duty, and no doubt conscientiously, but the court has also a duty equally important. Courts are not organized to record verdicts which are unsupported by the evidence, and it is their duty to set all such verdicts aside; and it must be understood that there are two ordeals to pass in this court. The jury have negatived the charge of fraud, and with that finding we shall not interfere; but if ever a fact was proved and demonstrated in a court of justice, it was shown in this case that the plaintiffs' loss did not exceed thirty thousand dollars. The plaintiffs' books furnished no basis from which the value of the stock could be ascertained. Their reliability rests upon the interested testimony of the plaintiffs alone. How the conclusion was reached that the value of the plaintiffs' stock was equal to or exceeded the sum of fifty-four thousand dollars it is difficult to understand. It is an admitted fact that the plaintiffs settled with several of the companies on the basis of $29,261.36 as the total loss, and it is shown by Breme, by Durand, Chase, Eaton and French that the plaintiffs admitted that to be the actual amount of their loss. Opposed to this

we have the almost unsupported testimony of the plaintiffs. We have also the testimony of St. Paul merchants showing that the plaintiffs could not have had, at the time of the fire, more than thirty thousand dollars' worth of stock. With the views which we entertain of the evidence in this case, we could not record this verdict without abdicating our functions as a court. This we are not prepared to do. We shall grant a new trial in this case, giving the plaintiffs. however, permission to remit the verdict to the basis of a total loss of $30,000. Judge Miller has repeatedly expressed his regrets to me that he did not set aside the verdict in the underwriter's case—the last one tried. The defense in this case is stronger even than the one made in that, additional evidence for the defense having been introduced upon this trial."

The counsel for the plaintiffs, on the following day, submitted some remarks criticising the action of the court, and claiming that the court, in setting aside the verdict, had invaded the province of the jury; to which the court then responded in the following remarks. which define the duties of juries and the rights of courts:

DILLON, Circuit Judge. The counsel for the plaintiffs seem to be laboring under a radical misapprehension as to the distinction which exists between the respective provinces of courts and juries. They are distinct. It is for the jury to find the facts, but it is for the court to instruct them as to the law, and it is the duty of the jury to follow those instructions. The court must not, and I certainly would not, invade in the slightest degree the province of the jury, nor will I permit the jury to invade the province of the court. The law has invested judges with certain powers, requiring them to be so exercised that verdicts rendered against the law and against the evidence should be set aside. A judge who fails to perform that duty is not fit to sit upon the bench; and so essential is this power in courts, that without 'it juries would not be in existence to day. I am satisfied, and it is the experience of every lawyer, that these powers are exercised by the courts by far too seldom. I appreciate the boundary line which separates the powers and duties of courts and juries. I shall always be careful not to overstep it, and shall be equally careful that juries do not invade mine. While I sit on the bench I will not surrender my judgment as to what my own duty requires of me. nor will I sustain a verdict which I know to be wrong by twelve men, nor by twelve times twelve men. We might safely appeal as to the propriety of our action in these cases to the intelligent conviction of every person who' heard this trial, and even, could it be done, to the inner heart of this very jury. The defendants were powerful corporations, and sympathy for the comparatively weak in contests against the strong and the powerful is one of the noblest attributes of

human nature. The jury undoubtedly yielded to this natural sympathy, and this is probably the explanation of their verdict. While we cannot be surprised that this sympathy should be felt by them, it is nevertheless the duty of both courts and juries to remember, and in that our safety rests, that courts are organized for the administration of justice, and the law knows no difference so far as their rights, as they shall appear from the evidence, are concerned, between individuals and corporations.

We have carefully deliberated upon the conclusion which we have reached. and are satisfied that we could not be justified in permitting the verdict in these cases to stand. And we make this order—That the defendants' motion for a new trial will be granted. unless the plaintiffs' counsel will remit on the basis of a total loss of $30,000, in which case, on the defendants filing a waiver of all error and right to appeal, the motion for a new trial will be denied.

After consideration the plaintiffs complied with the condition required of them by filing a remittitur, and the companies complied with the condition required of them by stipulating to waive errors, and judgment was entered accordingly.